| |
|---|
| **People v Campbell** |
| 2024 NY Slip Op 30521(U) |
| February 16, 2024 |
| Supreme Court, Bronx County |
| Docket Number: Indictment No. 70739-22 |
| Judge: Ralph Fabrizio |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
BRONX COUNTY, PART TRP

----------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK

                                                   **Decision and Order**
                                                   **Indictment No. 70739-22**

                  **-against-**

ANTHONY CAMPBELL,

                              **Defendant.**

----------------------------------------------------------x

The main question presented concerns the merits of the People's application to terminate defendant's post-plea, interim probation supervision ("ISP") pre-sentence condition, based his new arrest and indictment for first degree robbery. Since the People, the plea judge, and the New York City Department of Probation ("Probation") did not advise defendant that not being indicted while on ISP could result in ISP termination, defendant argues this lack of specific notice would violate his right to due process notice should the Court rule in the People's favor. A defendant sentenced to probation can be terminated on the probation sentence even where that defendant has never been advised that a "do not commit a new crime" provision could be asserted as a ground to terminate such sentence as a matter of state law. CPL§ 410.20(2). Defendant argues this statute does not apply to ISP, and this Court must deny the People's application, release defendant from custody, and restore him to ISP. A court's application of 410.20(2) to ISP seems to be an issue of first impression. This Court grants the People's application and terminates defendant's ISP.

Defendant was charged by a grand jury in this matter with the class C violent felony offense of Criminal Possession of a Weapon in the Second Degree. Penal Law § 265.03(3), and related crimes. The grand jury found probable cause that defendant knowingly and unlawfully possessed a loaded and operable 9mm semi-automatic firearm on October 6, 2021, in the vicinity of East 241st Street and White Plains Road. According to the People, defendant ran from the police with this gun prior to his apprehension. Defendant was at liberty on bail on this matter, set at a $10,000 partially secured bond.

On May 11, 2023, the People made a plea and sentence offer. Defendant would enter a plea of guilty to an attempt to commit the crime of Criminal Possession of a Weapon in the Second Degree, a class D violent felony offense, in exchange for a two-year determinate state prison sentence, followed by two years post release supervision. This is, of course, the lowest legal plea bargain that could be offered given the charges in this indictment. CPL § 220.10(5)(d)(i). However, the People added an additional condition. Defendant would also enter a plea of guilty to a class A misdemeanor, Criminal Possession of a Weapon in the Fourth Degree. Penal Law § 265.01(1). The

1

People required the judge to place defendant on ISP for one year. The People advised the judge and defendant that, should defendant successfully complete one year of ISP, defendant would be permitted to withdraw his legal plea to the Class D violent felony, and would be sentenced, not to probation, but to a conditional discharge on the misdemeanor conviction. The plea judge inquired whether the conditions of the offer were based on the DA's "offices assessment of the case as well as conferences with supervisors;" the ADA replied, "Yes." The People never asked the judge to impose a condition that, should defendant be rearrested while on ISP, his conviction to the felony gun charge would stand and he would receive the agreed-upon prison sentence.

Defendant admitted under oath that he unlawfully possessed the gun. After advising defendant that his conviction based on this plea of guilty "can be the basis for additional punishment if in the future you are convicted of another crime," the judge said, "[b]ut, what we want is just to do the interim probation, you will get a misdemeanor, conditional discharge and get on with your life." The judge told defendant the next court date would be "just for an update, to make sure you are doing everything. You will get papers today, you might as well go to probation, get that over with and see you then. If you have any questions, call your attorney." The judge did not advise defendant that committing a new crime would be considered a violation of ISP. After some off-the-record discussion, the case was adjourned for more than four months, to September 13, 2023, for a report from Probation on defendant's ISP progress and compliance. The sentencing was therefore deferred for one year.

The papers referred to include the judge's signed ISP order, with pre-printed ISP conditions. The judge added no additional supervisory conditions; the only addition made in writing on the ISP conditions form was a written notation saying defendant would end the case with a misdemeanor conviction and a sentence of a conditional discharge if defendant successfully completed ISP. The written specifications, which defendant and the judge signed in court, do not direct defendant to lead a "law abiding life" while on ISP, or that a failure to do so would result in termination of ISP. There is a condition requiring defendant to advise the probation officer of an arrest while on ISP.

The case was transferred to this Court by the administrative judge. On September 13, 2023, neither defendant nor defense counsel appeared. The People had no information and made no substantive record. The Court reviewed the pre-sentence investigation report ordered at the time of plea. The report noted defendant was "adjusting well to ISP." This Court issued a bench warrant, stayed its execution based on the report, and adjourned the case to October 2, 2023. On October 2, 2023, defendant once again failed to appear in court; his attorney appeared. This report indicated defendant had been referred to the "Robbery, Assault, and Weapons (RAW) Group." Probation also reported defendant failed to attend the first session of that ISP-mandated program. He had also failed to report to Probation "as directed" on September 20, 2023. There was a positive home visit on September 14, 2023. Defendant reported employment in "Freelance Carpentry," but had never submitted verification of that employment to Probation. The People did not ask this Court to find

2

defendant in violation of ISP conditions; the Court once again stayed the issuance of a bench warrant. The Court adjourned the case until October 24, 2023.

The next ISP report informed the People that defendant had still not provided any proof of employment. He had completed five RAW group sessions out of twelve scheduled. There had been a positive home visit on October 17, 2023. The report noted an "E-Justice Report" had been reviewed and it showed no arrests or warrants. Of course, defendant had not appeared for two prior court appearances, and warrants were ordered but their execution stayed. Defendant was not present at the time the case was called, and the Court ordered a bench warrant to issue. Defendant finally appeared, late, on October 24, 2023. The Court heard an explanation and expunged the warrant. It was revealed there may have been some off-the-record agreement at the time of the plea that defendant had to appear only if there was a "negative" ISP report. Since the reports are mostly supplied on the compliance date, this Court could not understand how to enforce such a promise. The Court told defendant he had to appear at all future court dates. The Court agreed, however, to continue the off-the-record, long compliance date plan, and adjourned the case for three months until January 25, 2024.

In a report provided on January 25, 2024, Probation informed the Court, for the first time, that defendant had been arrested on December 6, 2023, about six weeks earlier. The charges included Robbery in the First and Second Degrees, and Criminal Possession of a Weapon in the Fourth Degree. The new case had been indicted, defendant had been arraigned on the indictment, and the matter had already been adjourned for decision on defendant's pre-trial motions to March 7, 2024, before another judge. Defendant was not in custody when he appeared for the ISP "update." The Court reviewed records showing someone posted bail on the new matter, which is Bronx County Indictment Number 75422-23, on December 29, 2023. The People had never informed this Court of the new arrest, nor asked the case to be advanced to terminate ISP. Neither had the ISP probation officer.

The Court directed a representative from Probation come to the courtroom. When the matter was called into the record, the People asked the Court to "impose the prison alternative sentence." Defense counsel opposed the application, arguing Probation had not filed any paperwork seeking to have defendant violated on ISP. A probation officer said the New York City Department of Probation does not file Declarations of Delinquency for ISP matters, or any probation violation paperwork, because defendants on ISP are not sentenced to probation. This probation officer stated, in substance, that it is up to the People to ask to ask a court to terminate ISP, and the judge makes the decision without any request or position stated by Probation. This probation officer informed the Court, in substance, that directing a defendant on ISP to lead a law-abiding life was part of all ISP specifications, just as it would be where a defendant is sentenced to probation. The Court remanded defendant, directed the People to provide defendant with the grand jury minutes of the new matter, and have witnesses present for a hearing to determine whether the Court would find defendant violated ISP.

3

The People called one witness at the hearing, Probation Officer Kazi Ahmed. The written ISP conditions, as part of the Court file, are in evidence. In addition to the fact that there is not a "lead a law-abiding life" condition written as an ISP condition, defendant's ISP probation officer never directly advised defendant that an arrest or indictment while mandated to ISP would be factored into Probation's determination of whether defendant "successfully completed ISP." The probation officer opined this would be a condition ordered by a judge. The probation officer alleged that perhaps by inference he had advised defendant of a no arrest condition of ISP, since the officer told defendant he had to report any new arrest to Probation while on ISP, a condition also listed on the pre-printed ISP form. The probation officer further testified that, although he knew about defendant's robbery arrest through an automated notification system, and he tracked the progress of that case, defendant never notified Probation about the new arrest until some day after bail was posted, some three weeks after the arrest. The probation officer testified he has records of all defendant's probation appearances, including the one when defendant finally reported the new arrest, but he could not recall that date. The People had not asked the officer to bring any records. The probation officer said he believed defendant was "in compliance" with the RAW term he imposed, but again brought no records to substantiate any progress defendant may have made after October 2023. The probation officer testified, in substance, that in his opinion, he could not say anything other than defendant was in compliance with all the conditions of ISP imposed in this matter. He could not advocate for defendant to be found in violation of any ISP terms. That seems also to be a policy of the New York City Department of Probation in ISP matters. The Court ultimately admitted the certified grand jury minutes with evidence supporting the new indictment into evidence.[1] Defendant did not cross-examine the probation officer or call witnesses.

Under the law, there is a distinction between a sentence of probation and ISP. CPL § 390.30(6) provides the only legal, statutory authority allowing a court to impose ISP conditions. Article 390 contains procedures relevant to the pre-sentence phase of a case. There are several steps required to be taken before a defendant is actually placed on ISP. First, a court must determine a defendant to be eligible for a sentence of probation. Based on the original charges in the indictment, defendant was not automatically eligible for a probation sentence. Defendant faced a mandatory minimum state prison sentence of three and a half years, followed by a period of post-release supervision. A defendant charged with criminal possession of a loaded and operable firearm can be eligible for a probation sentence if the People offer, and the court agrees to accept, a plea of guilty to a lesser violent felony offense, which is the only legal plea offer absent a Court's ruling to dismiss violent felony charges. In this case, based on this indictment, the only legal lesser violent felony plea would be to an attempt to commit the C violent gun possession felony. While this plea bargain offer made defendant technically eligible for a sentence of probation, the legislature conditioned a

---

[1] Prior to resting at the hearing, the People proffered the certified grand jury minutes as evidence. Defense counsel objected to this evidence, arguing, inter alia, that it would be a due process violation for this Court to consider them as grounds to find defendant violated ISP. The Court reserved decision, did its own legal research, and based on 410.20(2), ordered the hearing reopened, accepted the minutes as evidence, and heard additional argument.

4

judge's imposing such an "alternate" sentence to the two-year minimum mandatory state prison term for that crime on several additional factors. The first factor listed, most likely because it would be viewed as the most important one, is that such "alternate sentence is consistent with public safety." Penal Law § 70.02(4)(b). The second factor is that the alternate sentence would not be viewed as one that would "deprecate the seriousness of the crime." Id. If a judge makes both findings, the judge must further find evidence of one of three additional factors: 1). the existence of "mitigating circumstances that bear directly on the manner in which the crime was committed;" or 2). where a defendant is charged with others in the commission of the violent crime, "the defendant's participation was relatively minor;" or 3) any "possible deficiencies in proof of defendant's commission of an armed felony." Penal Law § 70.04(4)(b)(i-iii). If a judge makes these requisite findings, the legislature requires the judge to "make a statement on the record of the facts and circumstances upon which determination is made" to sentence defendant to probation. Penal Law § 70.04(4)(c). For what is likely purposes of transparency and accountability in armed felony cases, the legislature further requires that "[a] transcript of the court's statement, which shall set forth the recommendation of the district attorney, shall be forwarded to the state division of criminal justice services, along with a copy of the accusatory instrument." Id. That seems to be a directive to the clerk or members of a court's administrative staff, but it easily can be read to apply to judges who sentence a defendant to probation for an armed violent felony charge.

This Court has summarized the sparse plea record the People made for the reasons they made an offer of a possible non-jail alternative sentence. They provided no "facts and circumstances" at that time to justify imposing an alternative probation sentence to the mandatory state prison sentence for the armed violent felony. Significantly, the People never requested that defendant to be sentenced to probation. Thus, the People failed to satisfy their obligation under the very first requirement of CPL § 390.50. Perhaps in a real ISP matter, a judge can make a finding based on a spotless record of compliance that such an individual may no longer pose a threat to public safety and pronounce a probation sentence. However, the People never asked the judge to impose ISP as precursor to pronouncing a sentence of probation. The purpose of ISP probation is to determine whether a defendant will "succeed on probation" when and if such a sentence is pronounced. See People v. Marcel, 2009 NY Misc. LEXIS 5018 at *2 (October 9, 2009) (Sup. Ct. Kings Cty). That is clear from the language in the statute itself and the history behind this statute. This statute was enacted, with its very specific and narrow terms, after the very practice the People advocated for in this case had been found illegal, because there was no legislative authorization. See People v. Rodney E., 77 NY2d 672 (1991). A plea bargain such as this one, that does not follow the legislature's specific ISP mandate, appears to be illegal. See People v. Suarez, 203 AD2d 604 (2nd Dept. 1994). In the case of an illegal plea bargain, a defendant always has a right to ask to withdraw such a plea prior to sentence. Id.; see also People v. Gemmill, 284 AD2d 808 (3rd Dept. 2001). Defendant would never be sentenced to probation even on the legislatively unauthorized misdemeanor conviction. A defendant can waive the right to raise such an issue on appeal where the waiver is properly explained. See id.; see also People v. Turner, 174 AD3d 1123, 1124-25 (3rd Dept 2019).

5

What this Court is best able to discern from the record is the People did not believe it prudent, in a case where a Bronx grand jury charged defendant with illegal gun possession, to specifically advise defendant that if he committed another crime while at liberty he would face any state prison sentence and in a case where they advocated that defendant remain at liberty for a year following a plea to a violent felony charge. The belated concerns the People first expressed on January 25, 2024, could have very well been brought to the Court's attention nearly two months earlier, when defendant was held for grand jury action on a violent felony charge. Defendant highlights these facts as evidence that he has been led to believe he is compliant with ISP, and for this Court to find otherwise would violate his right to due process and specific performance of the plea bargain as he views it. Probation added fuel to the due process fire; once defendant was released on bail following the robbery indictment, probation let him resume ISP, unconcerned that the Court might conclude otherwise. To defendant, he has lived up to his part of the bargain brokered by the District Attorney, and continues to do so, based on the terms of the People's own plea offer, the written ISP conditions, and the testimony his ISP probation officer.

And that takes us to CPL § 410.10 (2). Despite the absence of any provision on the record, in the written specifications, or as a condition set by Probation advising defendant that proof he committed a new felony would be considered a violation of ISP, this Court finds that failure to be irrelevant to defendant's due process claim, as it finds CPL § 410.10 (2) provides ground to terminate Probation's supervision of an individual mandated to probation supervision by court order. CPL § 410.10 (2) is a mirror image of Penal Law § 65.00(2), which provides a court "may . . . if a defendant commits an additional offense ... revoke the [probation] sentence at any time prior to the expiration or termination of a period of probation." Defendant is correct that the letter of these statutes apply to a "sentence" of probation, and asks how, given that language, these statutes can apply to ISP, which is not a sentence. See People v. Johnson, 173 AD3d 1446, 1448 (3rd Dept 2019) (citing CPL § 410.10(2)). This Court answers, how could they not apply. In terms of due process, these statutes provide defendant and everyone else under probation supervision with notice that commission of a new offense while under probation supervision is grounds to terminate Probation's involvement with the defendant. The commission notes to CPL § 410.10 (2) say what common sense dictates not even need be said: "That condition should be obvious to any offender and need not be stated with the other conditions." (Accessed at NY CLS CPL § 410.10 (LEXIS 2024.)). The application of such an obvious condition to a termination of ISP is consistent with the legislative purpose of both ISP and probation. Penal Law § 65.10 (1), which is the general statement the legislature provides for the imposition of probation specifications, states that "conditions of probation . . . shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life, or assist him to do so." CPL § 390.30(6) specifically references Penal Law § 65.10 (1). Thus, if a court finds a defendant on ISP has committed a crime, the reason for sentencing that defendant to probation based on a belief that defendant will later succeed on a probation sentence and lead a law-abiding life collapses.

6

For a defendant's probation sentence to be terminated based 410.10(2), the law does not require that defendant be "convicted of the additional criminal offense for it to serve as a basis for revocation of probation." Johnson, 173 AD3d at 1148. Of course, mere evidence of an arrest is insufficient to support a finding of a violation of probation under this statute, and therefore evidence of an arrest alone cannot serve as a stand-alone basis for termination of Probation's involvement with a defendant through ISP. See People v. Schneider, 188 AD2d 754, 756 (3rd Dept 1992). The legislature did not require the procedural due process requirements of a Violation of Probation ("VOP") proceeding apply to an ISP violation inquiry. See People v. Rollins, 50 AD3d 1535, 1536 (4th Dept. 2008). There is no requirement that probation file a VOP with conditions, although in some courts the local probation department does so in an ISP scenario. See People v. Koons, 187 AD3d 1638, 1639 (4th Dept 2020). A hearing to terminate ISP is conducted pursuant to CPL § 400.10, because ISP itself is part of the pre-sentence proceedings. Id. The ISP pre-sentence hearing must afford a defendant an opportunity to be heard, to cross-examine witnesses, and to present and contest evidence. Id. The proof required for a court to terminate ISP must be sufficient to "'assure itself that the information upon which it bas[ed] the sentence [was] reliable and accurate.'" Rollins, 50 AD3d at 1536 (quoting People v Outley, 80 NY2d 702, 712 (1993)). That burden can be met by proof of a new indictment. See People v. Perkins, 125 AD3d 1045, 1047 (3rd Dept. 2015).

Here, the proof is not just the fact of the indictment. The People have proffered the certified minutes of the testimony before the grand jury that voted the robbery charges. The minutes contain detailed lengthy testimony under oath by the victim. In relevant part, the victim encountered defendant after what may or may not have been a staged fender-bender. There was a demand for money, and the victim refused. When the victim took a cell phone photo of the license plate of the car defendant drove, defendant got out of the car and, according to the victim, brandished a knife as unnamed accomplices assaulted the victim, and caused the victim physical injury. They stole the victim's money and other property, and defendant got back in the car. The victim called for the police; officers arrived and canvassed the area with the victim for the car and defendant. The victim spotted the car, with the same license plate number, and identified defendant, who was still behind the wheel. The officers found a knife in the car; the victim testified it was the same knife defendant brandished. The Court finds this sworn testimony to be reliable and accurate and is grounds to terminate ISP.

Even if 410.10(2) does apply to ISP, this Court finds sufficient reliable evidence that defendant violated other conditions of ISP conditions about which he was advised. One condition requires defendant to report any arrest to his probation officer. The testimony of the probation officer revealed that Probation was notified through an automated notification system of the defendant's arrest on the robbery case within a day, and not at that time by defendant. Defendants held in custody have phone privileges. Defendant is represented on the new matter by the Legal Aid Society. Defendant never called. Probation also knew defendant had been held on bail and they monitored the progress of that case. He continued not to call Probation. Defendant did not report the arrest to Probation prior to the day bail was posted, which was December

7

29, 2023. There is no evidence when defendant appeared for any scheduled probation appointment, or whether he missed any scheduled appointments while in custody. The record discloses defendant only reported the new arrest at some time after he appeared in person at the probation office after bail was posted. The probation officer testified in a very conclusory manner that defendant's reporting the arrest after nearly a month made him in compliance with ISP. Defendant did not cross-examine the probation officer, and argued there is no immediacy requirement that can be read into this notice condition. The purpose of the "let the probation officer know about a new arrest" term, to this Court, must be read that the supervisee report that arrest as soon as practicable. It is no different from a requirement that a person under probation supervision notify a probation officer of a change in residence and do so immediately. See In re Anthony A., 255 AD2d 246, 246-47 (1st Dept 1998). To allow the requirement of reporting such a serious event as an arrest for a knifepoint robbery to be satisfied when the supervisee casually strolls in weeks later and mentions he had been arrested and charged with first degree robbery more than three weeks ago is inconsistent with this Court's view of the seriousness of such an ISP condition. Defendant, in his post-plea posture on this case for a dangerous armed felony, is not entitled to the same protection of the pre-conviction bail statutes. The People, and Probation, took no steps aimed to bring defendant before the Court although they knew about this case and the new violent case. This Court finds that the unchallenged evidence that defendant waited at least twenty-three days before coming into the ISP office to provide the required information is evidence of a willful act not to comply with his "report that arrest" condition. This is a separate legal ground to terminate ISP. If defendant cannot be compliant with the dress rehearsal, his probation sentence performance would be equally problematic.

There is more reliable evidence to support this conclusion. Based on reports this Court received on every compliance date, Probation alleged defendant committed other violations. These include his not reporting when required to his probation officer, not ever providing proof of employment, and missing court dates, which is another condition listed in the ISP specification form. The fact that the People never asked this Court to terminate ISP until the report came in saying defendant had been indicted for a new felony offense is concerning, but irrelevant to this Court's ruling. The People may have clouded the legal process by turning ISP into a plea-bargaining condition for which it was never intended. But to this Court, tasked with sentencing defendant, these failures provide relevant information that defendant could not be successfully supervised if sentenced to probation. The uncontested allegation that defendant missed the first RAW group session is also significant evidence that a probation sentence would not succeed in assisting defendant to lead a law-abiding life in the future. Penal Law § 65.10(1). The probation officer testified that he believed defendant complied with this ISP imposed condition. This Court has no information that defendant ever completed 12 sessions of RAW in the five-week period between October 24 to December 6, 2023, the day of his arrest. If he did, this is one RAW program that needs some serious retooling, based on the charges in the new indictment.

Following the inquiry, at which defendant was afforded all procedural and substantive due process rights, this Court finds defendant is not a suitable candidate for

8

any "alternate" sentence for his felony gun conviction, and grants the People's application to sentence defendant to the state prison sentence defendant knew would be imposed based on a finding that he violated any condition of ISP. The Court will proceed to sentencing following receipt of an updated pre-sentence investigation report, and after considering any further legal applications from defendant.

This constitutes the Decision and Order of this Court.

Dated: Bronx New York
February 16, 2024

Ralph Fabrizio, AJSC